## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 22-267** |
| **v.** | : | |
| | : | |
| **NAFIS WOODS** | : | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.  PROCEDURAL HISTORY

On August 16, 2022, a federal grand jury returned an indictment charging Defendant

Woods with one count of possession of a firearm, in violation of 18 U.S.C. § 922(g).

On August 21, 2023, Defendant Woods filed a Motion to Suppress, in which he raised

two issues. In his first issue, the Defendant argued that the Kel-Tech .380 caliber firearm

recovered on the ground where the Defendant fell was an unlawful seizure and should be

suppressed. (Def Memo at 1-2, ECF No. 27.) In his Motion, the Defendant claimed that (1) the

officers lacked reasonable suspicion to conduct an investigatory stop of the Honda Pilot

registered to the Defendant; (2) a "seizure" occurred when the officers activated their lights

and sirens in a "show of authority;" and (3) the recovery of the firearm was the result of the

unlawful stop. *Id.*

In his second issue, the Defendant made the separate claim that the search warrant for

the Honda Pilot was issued without probable cause and the items recovered should be

suppressed. (Def. Memo at 6-9, ECF No. 27) The Defendant argued that he is entitled to a

*Franks* hearing because (1) the search warrant affidavit contained false statements and

material omissions; (2) the false statements and omissions were made by the affiant with

reckless disregard for the truth; and (3) if the false statements are omitted and the material omissions are added, the affidavit does not establish probable cause for the search. *Id*.

On August 29, 2023, the Government filed its response to the Defendant's motion to suppress. The Government responded that the facts do not support either of the Defendant's two claims raised in the Defendant's motion to suppress. As to the first issue, the Government highlighted that (1) the officers did not make a "show of authority" before the Defendant fled from police; (2) the Defendant's immediate and unprovoked flight occurred before there was any police contact[1]; (3) the Defendant did not submit to authority before he fled; and (4) there was no seizure until after the Defendant ran and the firearm hit the ground when he fell. The Government also argued that the officers had reasonable suspicion to stop the Defendant's Honda Pilot, based on the information that the vehicle was observed fleeing the scene of a shooting and the description of the vehicle provided in the radio broadcast. But, as the Government noted in its response, the Court need not reach that issue, because the Defendant's pre-contact flight and the discarding of the loaded firearm occurred before the officers had the opportunity to stop him.

As to the second issue – the Defendant's claim that he is entitled to a *Franks* hearing, the Government responded that the Defendant has not met either of the two prongs of the *Franks*' test. First, he cannot demonstrate that the affiant included a false statement(s) or omitted a material fact with reckless disregard for the truth. Second, the affidavit contains ample probable cause even after the allegedly false statement(s) are excised and allegedly

---

[1] In its response, the government, in an effort to emphasize that here there was no seizure, pointed out that there is abundant case law, holding that even a momentary pause by a suspect does not constitute submission to police authority, let along the Defendant's immediate flight in this case.

material omissions are included. Hence, the Defendant fails to make a "substantial preliminary showing" required to compel a *Franks* hearing.

On October 18, 2023, the Court held a suppression hearing (transcript at docket no. 40). The Government called two witnesses to testify, Philadelphia Police Officers Erik Pross and Kevin Creely. The Government also introduced the video recording of the body worn camera of Officer Kevin Creely, captured on October 17, 2019. The witnesses' testimony and the video of Officer Creely's body worn camera support the Government's position that the Defendants unprovoked flight from his Honda Pilot occurred before the officers had the opportunity to make contact with the Defendant. This evidence confirms that the Defendant was not seized prior to his flight and the recovery of the loaded Kel-Tec .380 caliber firearm from the area of the ground where he fell.

The Defendant presented no witnesses at the suppression hearing as to either of the issues he raised. As to his first issue, he entered several police reports, which he used to question the two police officers. At the hearing the Defendant contested the officer's testimony that the police vehicle's lights and sirens were turned on at the time the officers turned onto Elkhart Street, but he never disputed that he immediately fled from the police. As to his second issue, the Defendant did not present the testimony of Detective Thomas Simogyi, the affiant on the search warrant affidavit or Mr. Titus Betts, who claimed to be a victim of a robbery that night, after he was seen running from Tulip Street where a shooting occurred. The Defendant relied on the introduction of the search warrant affidavit, the subject of his motion, and the statement of Mr. Betts, who refused to sign it. He produced no offer of proof in the form of sworn affidavits or reliable witness statement(s). The Defendant claimed that through the admission of these exhibits that he had made a substantial preliminary showing that he is

entitled to a *Franks* hearing.

## II. **FINDINGS OF FACT**

### A.  **First Suppression Issue: No Fourth Amendment Seizure Occurred Prior to Defendant Wood's Flight**

1. Philadelphia Police Officers Kevin Creely and Erik Pross testified credibly, and the Court accepts their testimony as fact.

2. Philadelphia Police Officer Erik Pross has been a member of the department for approximately 20 years. He was assigned to the 24th police district for approximately 18 years. 10/18/2023 Suppression Hr'g Tr. at 62.

3. On October 17, 2019, Officer Pross and his partner, Officer Scott Schweitzer, were on footbeat in the 24th district. They were assigned that evening as extra coverage because that area had been experiencing high rates of crime, including a number of shootings. *Id.* at 63.

4. On October 17, 2019, at approximately 7:54 p.m., Officer Pross heard approximately 4 to 7 gunshots being fired, to the east of their location, on Tulip Street. *Id.* at 63-64. They were at the corner of Trenton and Auburn Streets, approximately one block from Tulip Street. They ran to the 2800 block of Tulip Street and Officer Pross saw a dark-colored Honda Pilot traveling northbound on Tulip Street. *Id.* He also observed that the rear window was shot out of it. *Id.* at 65. He also saw a man with hair braids running westbound on Tulip Street onto William Street. He saw no other activity on Tulip Street at that time.

5. Officer Pross was with Officer Schweitzer when Officer Schweitzer gave flash information over police radio that shots were fired on the 2800 block of Tulip Street and gave the description of a dark-colored SUV and the direction the vehicle was traveling on Tulip Street. Officer Pross believed that Officer Schweitzer also broadcast over police radio that the rear window of the vehicle was shot or broken out of it. Officer Pross explained that this information regarding the vehicle was broadcast quickly so that other backup officers could investigate. *Id.* at 65-66.

6. Philadelphia Police Officer Cespedes found the man with the hair braids on William Street, the location to which Officer Pross had seen the man running. *Id.* at 64. When this man was brought back to the 2800 block of Tulip Street, Officer Pross heard the man claim that he had been robbed and his iPhone and $800 in cash had been taken from him. *Id.* at 66.

7. Philadelphia Police Officer Kevin Creely had been a member of the department for approximately 18 years at the time of Defendant Woods' arrest in this case. He has served in the 24th Police District and is very familiar with the area. *Id.* at 19.

8. On October 17, 2019, Officer Creely was in uniform in a marked police vehicle with his partner, Officer McGrody, who was driving. *Id.* at 20.

9. On October 17, 2019, Officers Creely and McGrody were traveling northbound on Frankford Avenue when, at approximately 7:50 p.m., flash information was broadcast over police radio concerning gunshots being fired on Tulip Street that caused them to turn their vehicle around and proceed southbound on

Frankford Avenue towards the area of where the shooting had occurred. *Id.* at 20-21.

10. Officer Creely recalled that the radio message stated gunshots had been fired in the 2900 (sic) block of Tulip Street and a dark-colored SUV was seen leaving the area of the gunshots. *Id*.

11. As they were traveling southbound on Frankford Avenue, Officer Creely saw a dark-colored SUV that matched the description given in the radio broadcast. The vehicle was a dark-colored SUV with a shattered rear windshield. *Id.* at 21-22.

12. Officer Creely observed the vehicle as it was traveling in the westbound direction on East Elkhart Street, which he explained was the wrong way, since on the east side of Elkhart, travel is only permitted one-way in the eastbound direction. He then observed the vehicle cross Frankford Avenue and then travel westbound on Elkhart, which is the permitted direction of travel. *Id*.

13. After the officers viewed the vehicle traveling westbound on Elkhart Street, Officer McGrady turned onto Elkhart Street to follow the vehicle. *Id.* at 24. As the police vehicle made the turn onto Elkhart Street, the lights and siren of the police vehicle were not activated. *Id.* at 22. Officer Creely explained that the officers intentionally did not turn on the lights and sirens for safety reasons. The officers did not want to alert the occupants of the vehicle that the police were about to pull them over. Officer Creely stated that, because there was a shooting that occurred on the 2800 block of Tulip Street , "you don't want to give somebody a heads up that you are driving in the area to give him a split

second on you to possibly shoot you." He further stated that it was a police tactic to go over the radio and get as many police units in the area as possible. He said he did not have the opportunity to do that in this case, because the Defendant's vehicle just pulled over on its own and the Defendant ran out of the passenger seat. *Id.* at 51-52.

14. Officer Creely said he was wearing a body worn camera that night and turned it on before he exited the police vehicle. *Id.* at 29. The video recording from Officer Creely's body camera was played at the suppression hearing for the Court. *Id.*; Government Exhibit G-1.

15. Officer Creely viewed the video recording both prior to the suppression hearing and at the suppression hearing. He pointed out that the video shows that, when the police vehicle made the turn onto Elkhart Street from Frankford Avenue, the lights on the police vehicle were not turned on. *Id.* at 22, 29, 35-36, 46.

16. Officer Creely, while still in his police vehicle, observed the vehicle pull over on its own and the Defendant immediately exit the vehicle on the passenger side and run westbound on Elkhart Street. *Id.* at 24-25.

17. Officer Creely quickly exited the passenger side of the police vehicle and ran after the Defendant. *Id.*

18. Officer Creely observed that the Defendant was running so fast that he suddenly tripped and fell in between two parked cars. As the Defendant fell to the ground, Officer Creely heard a metal clank, which he recognized as the sound of a firearm hitting the ground. Officer Creely stated that it is a

distinctive sound, which he has heard numerous times while working in the 24th Police District. *Id.* at 25-26.

19. Officer Creely caught up with the Defendant as he was on the ground and placed him in handcuffs. Officer Creely then walked the Defendant back to Officer McGrody. *Id.*

20. Officer Creely went back to the area where he had seen the Defendant fall and he had heard the sound of a firearm hitting the ground. With the use of a flashlight, he recovered the firearm from under a parked vehicle. *Id.* at 26-29.

21. When he picked up the firearm, Officer Creely noticed that the magazine was broken, because he heard something rattling around. He took the firearm back to the police vehicle and made it safe by removing the extended magazine and taking the bullets out of the chamber. Officer Creely later placed the firearm on Property Receipt 3433325. He described the firearm as a black Kel-Tec .380 caliber, bearing serial no. KD116. It had an extended magazine that had 11 rounds in the chamber. *Id.* at 29-30; Government: Exhibit G-9.

22. Officer Creely checked the vehicle's Pennsylvania registration with NCIC and determined that the Honda Pilot was registered to Defendant Nafis Woods. *Id.* at 32.

23. Following the Defendant's arrest and recovery of the Kel-Tec .380 caliber firearm, Officer Creely went back to secure the Defendant's Honda Pilot and check for any other weapons. With the use of a flashlight, he observed a second firearm under the driver's seat and also a cell phone and U.S. currency.

The officers decided to hold it for a detective to later obtain a search warrant. *Id.* at 31-32.

**B. Second Suppression Issue: The Defendant Is Not Entitled to A Franks Hearing**

24. Following the Defendant's arrest and the recovery of the loaded Kel-Tec .380 caliber firearm by Officer Creely on the evening of October 17, 2019, the officers, with the use of a flashlight, observed a second firearm underneath the driver's seat of the Defendant's Honda Pilot. Also observed was what-looked-like U.S. currency and at least one phone. The officers held the Honda Pilot in order for a detective to obtain a search warrant. *Id.* at 32.

25. On October 18, 2019, Philadelphia Police Detective Thomas Simogyi sought and obtained a valid search warrant from a magistrate of the City of Philadelphia for a search of the Defendant's Honda Pilot. Detective Simogyi was not present at the scene of the Defendant's arrest on October 17, 2019. *Id.* at 32-33.

26. The Defendant introduced the affidavit for the search of the Defendant's Honda Pilot, which is the subject of his motion. Defense Exhibit D-5. He also produced the statement of Titus Betts, which states that Mr. Betts refused to sign the statement he gave to the detectives. *Id.* at 72-73; Defense Exhibit D-4.

27. Mr. Betts was observed running from the 2800 block of Tulip Street immediately after several gunshots were fired and later claimed to be a victim of a robbery that night. *Id.* at 66.

28. Mr. Betts claimed that his iPhone and $800 in U.S. currency were taken from him that night. *Id.*

29. Officer Creely said that, after Defendant Woods had been taken into custody, Philadelphia Police Officer Cespedes arrived at the Elkhart Street location. While standing outside the Defendant's vehicle, Officer Cespedes placed a phone call, and Officer Creely immediately heard a phone ringing inside the rear passenger door of the Defendant's vehicle. *Id.* at 33.

30. The Defendant presented neither the testimony of the affiant of the search warrant, Detective Thomas Simogyi, nor that of Mr. Titus Betts.

31. Similarly, the Defendant has not produced an offer of proof, either in the form of a sworn affidavit or reliable statement, from either Detective Simogyi or Mr. Betts.

32. On this record the Court does not find the unsigned statement of Mr. Betts to be credible.

33. The Court finds that the Defendant has not offered any proof that an alleged false statement in the search warrant affidavit was made knowingly or with reckless disregard for the truth.

34. The Court finds that the Defendant has not offered any evidence of the state of mind of the affiant to show that any statement(s) or omissions in the affidavit were made in bad faith or were inadvertent.

## III.   LEGAL STANDARD

### A.  First Suppression Issue

"The controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance." *United States v. Matlock*, 415 U.S. 164, 178, n.14 (1974).

The initial step of a Fourth Amendment suppression analysis is to determine whether a seizure has taken place only if so, when the seizure occurred. *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) *See also*, *United States v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009) ("[A]ny seizure inquiry has two steps: Was there in fact a seizure: If so, was that seizure reasonable?").

"A seizure triggering the 4th Amendment protections occurs only when Government actors have, by means of physical force or show of authority in some way restrain the liberty of a citizen." *Graham v, Connor*, 490 U.S. 386, 395, n.10 (1989) (internal quotations and ellipses omitted); *see also United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006); (quoting *California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547 (1991) (" A seizure occurs when there is either (a) a laying of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful, or (b) submission to a "show of authority."). A display of authority without submission is not a seizure. *Brendlin v. California*, 551 U.S. 249, 254 (2007).

The Fourth Amendment does not come into play where a suspect flees at the site of police before an officer even has the chance to attempt to seize the Defendant by force, command, or other "show of authority." See *Hodari D.*, 499 U.S. at 622-23; *United States v. Jones*, 347 F. App'x. 129, 135 (5th Cir. 2009) ("no seizure occurred when the officer initially approached the Malibu, and the officers had reasonable suspicion for a detention when [the suspect] fled from the area."); *United States v. Goddard*, 491 F.3d 457, 461 (D.C. Cir. 2007) ("Nor did the stop occur when the police exited their car and began to approach Goddard and the three men.").

### B.  Second Suppression Issue

In *Franks v. Delaware*, 438 U.S. 154, (1978), the Supreme Court found that a criminal Defendant has the right, in some limited circumstances, to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant. *Franks*, 438 U.S. at 164-165. The right to a *Franks* hearing is not absolute. The Third Circuit has extended this right to permit challenges based on factual omissions from the warrant affidavit. See *United States v. Stanford*, 75 F.4th 309, 313 (3d Cir. 2023); *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006); *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000).

However, to overcome the general presumption that a search warrant affidavit is valid[2], and to compel an evidentiary hearing under *Franks*, the Defendant must first make a "substantial preliminary showing" that the affidavit contained materially false statements that were made knowingly or with a reckless disregard for the truth. *Franks*, 438 U.S. at 155-56; *see also Stanford*, 75 F.4th at 315; *Desu*, 23 F.4th at 234; *Yusuf*, 461 F.3d at 383. The Defendant must support the allegation of falsity with an accompanying offer of proof, such as sworn affidavits or other reliable statements of witnesses. *See Franks*, 438 U.S. at 165; *Stanford*, 75 F.4th at 315; *Desu*, 23 F.4th at 234; *Yusuf*, 461 F.3d at 383 n.8. The Defendant must specifically address the state of mind of the affiant to show that the alleged falsehoods were intentional, or that the affiant would have had "obvious reasons to doubt" the statements, or that the omissions were facts that "any reasonable person would want to know." *See Yusuf*, 461 F.3d at 383.

---

[2] A magistrate's determination of probable cause should be paid great deference by reviewing courts. *United States v. Harvey*, 2 F.3d 1318, 1321-22 (3d Cir. 1999). The duty of the reviewing court is simply to ensure that the signing authority had a substantial basis for concluding that probable cause existed. In evaluating a search warrant, the Court should "[K]eep in mind that the task for the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place" and "uphold the warrant as long as there is substantial basis for a fair probability that evidence will be found. *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).

"[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." *Desu*, 23 F.4th at 234, quoting *Wilson*, 212 F.3d at 783. "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that judge would want to know." *Id*.

Even if the Defendant is able to make the substantial preliminary showing of falsity, no hearing is required if the affidavit provides probable cause even without considering the allegedly false statements. *See Franks*, 438 U.S. at 172; *Desu*, 23 F.4th at 234. Thus, evidence will be suppressed under *Franks* only if the Defendant demonstrates "by a preponderance of the evidence that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and that the allegedly false statement is necessary to the finding of probable cause." *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006) (internal quotations and alterations omitted). Thus, in addition to demonstrating the inclusion of a false statement in the affidavit, the Defendant must "show both (1) that bad faith or reckless disregard existed on the part of the affiant, and (2) that there would have been no probable cause but for the incorrect statement." *Id*., citing *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993); *see also United States v. Harvey*, 2 F.3d 1318, 1323 (3d Cir. 1993).

In *United States v. Braddy*, 722 Fed. Appx. 231, 236 (3d Cir. 2017), the Third Circuit held that the Defendant was not entitled to a *Franks* hearing because "[a]lthough some of the statements in the affidavit were inconsistent with statements found in other documents, the Defendants' bare allegations do not support a finding that any false statements were made knowingly and intentionally or with reckless disregard for the truth, [n]or have they shown that any of the allegedly false statements were necessary to the court's probable cause determination."

## IV.   <u>CONCLUSIONS OF LAW</u>

### A. First Suppression Issue

35.  The officers did not seize Defendant Woods under the Fourth Amendment before he fled from the officers.

36.  The officers did not make a show of authority before Defendant Woods fled.

37.  Defendant Woods did not submit to authority before he fled.

38.  There was no seizure until after Defendant Woods fled and the firearm fell to the ground, when the Defendant tripped.

39.  Even if the officers had made a show of authority (which the evidence of record shows they did not), the Defendant fled and never submitted to police authority.

### B. Second Suppression Issue

40.  The Defendant has not made a "substantial preliminary showing" that the search warrant affidavit contained materially false statements that were made knowingly or with reckless disregard for the truth.

41.  The Defendant has not supported his bare allegation of falsity with an offer of proof, either in a sworn affidavit or reliable statement of any witnesses, to establish a bad faith assertion of a false statement by the affiant.

42.  The Defendant has not offered any evidence to show the state of mind of the affiant and, therefore, has failed to show that the affiant's assertions were made with reckless disregard for the truth.

43. Neither has the Defendant shown that any material omissions were made with reckless disregard for the truth by the affiant.

44. The search warrant affidavit provides probable cause to search, even without considering the allegedly false statement(s) and the alleged omissions.

45. No hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), is required, since there exists ample probable cause after excising the allegedly false statement(s).

46. The Defendant has failed both progs of the *Franks'* test.

47. As this Court is obligated to pay great deference to the magistrate's determination of probable cause, the Court finds the magistrate had a substantial basis for concluding that probable cause existed. *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).

## V.    CONCLUSION

Defendant Woods' Motion to Suppress the Kel-Tec .380 firearm and ammunition is denied. Woods is not privileged with the protections of the 4th Amendment as a result of him fleeing. *Id.* His abrupt and pre-contact flight from police proceeded and preempted any constitutional seizure. His unprovoked flight did not give law enforcement an opportunity to show their authority, which is necessary to establish a Fourth Amendment seizure. Defendant Woods did not submit to a "show of authority." It is immaterial whether the police had reasonable suspicion to conduct an investigatory stop of the Honda Pilot, because the Defendant fled and did not submit to police authority.

For all these reasons, Defendant Woods was not actually seized under the United States Constitution until the moment he was placed in custody. By the time he (1) fled from police in a high crime area, which provided reasonable suspicion to detain, and (2) discarded the firearm which now defeats any standing for him to suppress evidence in question. Accordingly, the seizure of the firearm is both legal and immune from 4th Amendment challenges.

As to the Defendant's Motion to Suppress the contents of the Defendant's Honda Pilot, he also loses on that motion, because he fails to prove either prong of the *Franks* test. First, he cannot demonstrate that the affiant omitted a material fact or included a false statement with the requisite mens rea. It is insufficient to prove the affiant acted with negligence or made an innocent mistake. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). Second, deletion of the allegedly false information and inclusion of the non-material and unreliable information would not obviate probable cause. Defendant Woods' request for a *Franks* is denied.

**BY THE COURT:**

***/s/ Honorable John Milton Younge***

**JOHN MILTON YOUNGE, J.**